```
             IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF KANSAS
```

**MATTHEW CHARLES SCHLOBOHM,**

                      **Plaintiff,**

           **v.**                                      **CASE NO. 19-3231-SAC**

**M.J. LOPEZ, et al.,**

                      **Defendants.**

## NOTICE AND ORDER TO SHOW CAUSE

This matter is a civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff, a pretrial detainee[1], proceeds pro se and seeks leave to proceed in forma pauperis.

### The motion to proceed in forma pauperis

This motion is governed by 28 U.S.C. § 1915(b). Because plaintiff is a prisoner, he must pay the full filing fee in installment payments taken from his prison trust account when he "brings a civil action or files an appeal in forma pauperis[.]" § 1915(b)(1). Pursuant to § 1915(b)(1), the court must assess, and collect when funds exist, an initial partial filing fee calculated upon the greater of (1) the average monthly deposit in his account or (2) the average monthly balance in the account for the six-month period preceding the filing of the complaint. Thereafter, the plaintiff must make monthly payments of twenty percent of the preceding month's income in his institutional account. § 1915(b)(2). However, a prisoner shall not be prohibited from bringing a civil action or appeal because he has no means to pay the initial partial filing fee. § 1915(b)(4).

---

[1] Plaintiff submitted a notice of change of address to the clerk of the court, and it appears he is no longer incarcerated.

The Court has examined the financial statement submitted by plaintiff and grants leave to proceed in forma pauperis. The Court does not assess an initial partial filing fee, but plaintiff will remain obligated to pay the $350.00 filing fee.

### Nature of the complaint

The complaint names as defendants M.J. Lopez, a deputy at the Wyandotte County Jail (WCJ); Donald Ash, Sheriff of Wyandotte County; Larry Roland, Undersheriff; (fnu) Fewell, jail administrator; (fnu) Patrick, major at the WCJ; E. Wilson, programs coordinator at the WCJ; and Sarah Toff, programs manager at the WCJ.

In Count 1, plaintiff alleges an illegal search and seizure and a violation of due process, stating that on October 28, 2019, defendant Lopez searched plaintiff's legal mail and neither returned it nor replaced the paper.

In Count 2, he alleges a violation of due process as well as violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments, stating that due process is almost nonexistent for pretrial detainees at the WCJ, and that on October 28, 2019, defendant Patrick visited plaintiff in "the hole" after he was placed there without due process except for "a perfunctory meeting" with defendant Patrick. He alleges a "departmental disdain for due process" flows from defendant Ash to defendant Roland, to Major Patrick, to defendant Fewell and to their subordinates.

On October 17, 2019, defendant Lopez conducted a shakedown of plaintiff's cell, which plaintiff alleges was done in retaliation due to his filing of grievances. Plaintiff states defendant Lopez accused him of having unauthorized medication and imposed a 7-day lockdown, during which he was allowed to leave his cell only for meals.

Plaintiff states that on October 23, 2019, he was called to the medical unit. Believing that defendant Lopez would search his cell in his absence, plaintiff took a folder of legal mail with him. Lopez saw the folder, ordered him to stop, and told him he could not go to the medical unit with the folder. As a result, plaintiff declined to report to the medical unit. During the same encounter, he told defendant Lopez that another prisoner had stolen his radio. He states that defendant Lopez did nothing to recover his property. Plaintiff also alleges that prices in the WCJ commissary are higher than prices for comparable goods in public stores and that prisoners in the jail often spend uninterrupted periods with a cellmate in a cell designed for a single occupant. He also appears to complain that he was not appointed counsel in a criminal action.

In Count 3, plaintiff alleges a denial of access to the court and to legal materials. He states that on October 30, 2019, defendant Wilson, after reading plaintiff's letter to the ACLU, told plaintiff he would not be allowed to send it using legal mail. He states that defendants Wilson and Toff made it clear they had read the letter, and that defendant Wilson refused to make a copy of the letter for inclusion in the present action. As a result, plaintiff was required to choose between sending the letter in his last remaining envelope or retaining it for use as an exhibit.

Plaintiff also claims that defendants Ash, Roland, Fewell and Patrick have implemented a policy of using tablets as the sole means of access to a law library. He complains they provide no legal aid or assistance to prisoners, and that they withhold library access.

Plaintiff seeks monetary damages.

**Screening**

A federal court must conduct a preliminary review of any case in which a prisoner seeks relief against a governmental entity or an officer or employee of such an entity. *See* 28 U.S.C. §1915A(a). Following this review, the court must dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from that relief. *See* 28 U.S.C. § 1915A(b).

In screening, a court liberally construes pleadings filed by a party proceeding pro se and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

To state a claim for relief under Section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48-49 (1988)(citations omitted).

To avoid a dismissal for failure to state a claim, a complaint must set out factual allegations that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court accepts the well-pleaded allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Id*. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the matter should be dismissed. *Id*. at 558. A court need not accept "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "to state a claim in federal court, a complaint must explain what each defendant did to [the pro se

plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

The Tenth Circuit has observed that the U.S. Supreme Court's decisions in *Twombly* and *Erickson* set out a new standard of review for dismissals under 28 U.S.C. § 1915(e)(2)(B)(ii). *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted). Following those decisions, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (quotation marks and internal citations omitted). A plaintiff "must nudge his claims across the line from conceivable to plausible." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). In this context, "plausible" refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct much of it innocent," then the plaintiff has not "nudged [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (citing *Twombly* at 1974).

## Discussion

### Motions

Plaintiff has filed a motion to amend the complaint (Doc. 5) which expands his request for monetary damages and a motion to appoint counsel (Doc. 9).

Under Fed. R. Civ. P. 15(a)(1)(A), a party may amend its pleading once as a matter of course within 21 days after serving it. No service has been ordered in this matter, and the Court grants the motion to amend.

Plaintiff's motion to appoint counsel seeks counsel to assist him in developing unspecified additional claims. There is no constitutional right to the appointment of counsel in a civil matter. *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995); *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989). Rather, the decision whether to appoint counsel in a civil action lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The party seeking the appointment of counsel has the burden to convince the court that the claims presented have sufficient merit to warrant the appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2016)(citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the movant] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)). The Court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979. Having considered the complaint, the Court declines to appoint counsel. The claims presented do not appear to be unusually complex, and plaintiff appears to be able to clearly present his arguments.

### Access to the courts

Plaintiff's claims in Counts 1 and 3 concerning the search and seizure of his legal mail appear to involve defendants' review of a letter plaintiff wrote to the ACLU to determine whether plaintiff was entitled to indigent legal postage. The Court construes the allegations to assert that defendants denied him access to the courts

when they concluded the letter addressed to the ACLU did not qualify for free postage, a decision that required plaintiff to either use his last envelope for the mailing or to retain the letter as an exhibit for this action. He elected to mail the letter.

As a detainee, plaintiff was "entitled to meaningful, but not total or unlimited access to the courts." *Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1107 (10th Cir. 2005). To state a claim for relief, plaintiff "must demonstrate actual injury from interference with his access to the courts" by showing that defendants "frustrated or impeded his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010)(citing *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996)). Here, even assuming the letter to the ACLU is appropriately considered as legal mail, plaintiff cannot show actual injury because he had the means to mail the letter and did so. *See Tijerina v. Patterson*, 543 F. App'x 771, 774 (10th Cir. 2013) ("[Plaintiff] failed to show an actual injury resulting from the defendant's refusal to provide him with more ... paper" because, despite the prison's denial of paper, the plaintiff filed the intended brief).

Plaintiff's claim that legal access is provided by tablets is insufficient to state a claim for relief. He does not suggest any factual basis why this method of providing access to resources is inadequate, nor does he explain how this caused any actual injury.

### Due process

In Count 2 of the complaint, plaintiff claims he was denied due process incident to his placement in segregation because he was given only a "perfunctory meeting" with defendant Patrick. He also complains

of a general disdain for due process in the WCJ, that his cell was searched in retaliation for his use of the grievance procedure, that commissary prices are too high, and that prisoners are housed with cellmates who may be dangerous. Finally, he appears to claim that a 7-day lockdown for possession of unauthorized medication violated his rights.

Because plaintiff is a pretrial detainee, his claims concerning his conditions of confinement are considered under an objective standard under the due process clause of the Fourteenth Amendment. That provision "was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression.... Its purpose was to protect the people from the State[.]'" *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)(quoting *Parratt v. Taylor*, 451 U.S. 527, 549 (1981)).

Under this standard, a court must determine whether the challenged condition of confinement "'is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Khan v. Barela*, 808 F. App'x 602, 606-07 (10th Cir. 2020)(quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979).

Likewise, a prisoner's conditions of confinement may violate due process if the prisoner is subjected to an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

In examining claims concerning segregation, the Tenth Circuit evaluates whether the placement is "atypical" by considering the duration of the segregation and whether the prisoner's confinement is extended as a result, whether the segregated confinement is indeterminate, the frequency of review of the placement, the

penological interest served by the segregation, and whether the conditions in segregation are extreme. *Estate of DiMarco v. Wyoming Dept. of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

Here, it does not appear that plaintiff's initial segregation was so lengthy or so extreme as to violate due process. Next, plaintiff's claim of a general "disdain" for due process, his claim of retaliation, and his claims concerning prices and celling practices are too vague to state a claim for relief. Finally, because the 7-day lockdown was based upon the discovery of unauthorized medication in plaintiff's cell, the conditions do not appear disproportionate or unreasonable and do appear to support a legitimate penological purpose.

### Order to Show Cause

For the reasons set forth, the Court directs plaintiff to show cause why this matter should not be dismissed for failure to state a claim for relief. In the alternative, plaintiff may file an amended complaint that provides additional factual support for the claims presented.

If plaintiff chooses to file an amended complaint, he should consider that an amended complaint is not an addendum or supplement to the original complaint but completely supersedes it. Therefore, any claims or allegations not presented in the amended complaint are no longer before the Court. Plaintiff may not simply refer to an earlier pleading; instead, the complaint must contain all allegations and claims that plaintiff intends to present in the action, including those to be retained from the original complaint. Plaintiff must include the case number of this action on the first page of the amended complaint. Finally, plaintiff is advised that any portion of the amended complaint that is not legible will not be considered by the

Court.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motions to proceed in forma pauperis (Docs. 2 and 6) are granted. Plaintiff remains obligated to pay the $350.00 filing fee.

IT IS FURTHER ORDERED that plaintiff's motion to amend the complaint (Doc. 5) is granted.

IT IS FURTHER ORDERED that plaintiff's motion to appoint counsel (Doc. 9) is denied.

IT IS FURTHER ORDERED that plaintiff is granted to and including **October 19, 2020,** to show cause why this matter should not be dismissed or to file an amended complaint. The failure to file a timely response may result in the dismissal of this matter for the reasons stated without additional notice.

**IT IS SO ORDERED.**

DATED:  This 17th day of September, 2020, at Topeka, Kansas.

                                         S/ Sam A. Crow
                                         SAM A. CROW
                                         U.S. Senior District Judge